UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SYNOVUS BANK,**
a Georgia corporation

    Plaintiff,

v.

Case Number:

MICHAEL DIETZ,
an individual,

    Defendant                    /

## VERIFIED COMPLAINT

Plaintiff, Synovus Bank ("Synovus"), by and through its undersigned counsel, sues the Defendant, Michael Dietz ("Dietz"), and alleges and seeks temporary and permanent injunctive relief and damages against Dietz as follows:

### NATURE OF THE ACTION

This is an action against Dietz, a former senior level employee of Synovus' Mortgage Division, for breach of covenants of non-solicitation of Synovus's employees. Specifically, Synovus seeks to: (a) enjoin Dietz from violating his covenants of non-disclosure of confidential information, non-solicitation of Synovus's employees and customers, and other contractual obligations to Synovus; and (b) obtain such other relief as this Court deems appropriate, including, without limitation, monetary damages resulting from the actions of Dietz.

Injunctive relief is necessary to protect Synovus from Dietz illegally continuing to solicit Synovus's employees for Dietz's current employer, Embrace Home Loans, Inc. ("Embrace Loans"), which is a direct competitor of Synovus. In the brief two (2) months Dietz has worked

for Embrace Loans after resigning his employment with Synovus, Dietz has illegally solicited six (6) out of the sixteen Synovus mortgage loan originators (herein "LOAN ORIGINATORS") - producers that sell/originate residential mortgages - that reported to him to terminate their employment with Synovus and work with him at Embrace Loans. Further, Dietz nefariously targeted and solicited the most successful LOAN ORIGINATORS in his region. For instance, the six (6) LOAN ORIGINATORS that Dietz solicited to terminate their employment with Synovus all ranked in the top eight (8) of Dietz's region in total value of residential mortgages originated. Without such relief, Synovus will continue to be denied its bargained for contractual rights, suffer substantial and irreparable harm, and incur substantial damages.

## PARTIES, JURISDICTION & VENUE

1. This is an action for damages and injunctive relief and involves matters in controversy in excess of $75,000, exclusive of interest and costs.

2. Synovus is a Georgia corporation with its principal place of business/corporate nerve center located in the state of Georgia, at 1111 Bay Avenue, Columbus, Georgia, that regularly conducts business, including the selling/originating of residential mortgages though its Mortgage Division ("Mortgage Div") throughout the state of Florida.

3. Pursuant to the "principal place of business" definition clarified by the Supreme Court in *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010), Synovus is a citizen of Georgia.

4. Dietz is a former Vice President Area Sales Leader in Synovus's Mortgage Div, and his office was located at 12456 Roosevelt Blvd, Suite 401, St. Petersburg, Florida 33716. Since the inception of the COVID-19 pandemic Dietz worked extensively from his residence located in Trinity, Florida, which is located in Pasco County.

5. Dietz, upon information and belief, is a citizen and resident of Florida.

4888-4270-0306.2

6. Jurisdiction is proper under 28 U.S.C. § 1332(a) (diversity jurisdiction), because this is a civil action between citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue in this district is proper pursuant to 28 U.S.C. §1391(b) because Dietz resides in Pasco County, Florida, and the conduct, or a substantial part of the conduct, alleged below and giving rise to this litigation occurred and is likely to occur at least in part in Pasco, County.

8. This Court has jurisdiction over this matter, as it is an actual controversy, and Plaintiff seeks more than $75,000 in damages, exclusive of interest and costs.

9. All conditions precedent to filing suit have been performed or waived.

## FACTUAL BACKGROUND

### A. Synovus's Business and Confidential Information.

10. Synovus is a commercial bank that provides comprehensive banking services and products to its customers, including residential mortgages through its Mortgage Division.

11. Synovus through its Mortgage Division does business in a highly competitive business environment where it intensely competes to sell/originate residential mortgage services and products to existing and prospective customers.

12. One of Synovus's direct competitors in the south Florida area, and other geographic areas, is Embrace Loans, Dietz's current employer.

13. Synovus has created and maintained a variety of confidential and proprietary information and trade secrets including, but not limited to, customer lists and lists of prospects as well as customer loan and account information; information regarding customer relationships, needs, or experience; sales and marketing plans and materials; research and product

development, strategic plans; business methods; investment strategies and plans; internal memoranda and policies; employee compensation, benefits and performance information and other valuable business information that provides Synovus a benefit in the marketplace (collectively referred to herein as "Information").

14. To protect its Information, Synovus developed and maintains a confidential database. The Information contained in Synovus's database was not obtained from public sources or purchased, but instead was compiled over time through Synovus's bankers and other employees by and through performing services for Synovus's customers and prospective customers. The database qualifies as valuable confidential business information. *See Reliance Wholesale, Inc. v. Godfrey*, 51 So.3d 561 (Fla.3d Dist. Ct. App. 2010).

15. Synovus exercises reasonable measures to ensure the continuing confidentiality of its Information. As part of these measures, Synovus requires all employees, including Dietz, to acknowledge and comply with certain policies and covenants related to ownership, confidentiality, non-disclosure, and non-use, which are necessary and reasonable to protect Synovus's legitimate business interests.

16. Synovus takes reasonable steps to limit the access to the confidential database housing its Information by managing access to confidential information based on the principles of privilege, monitoring access to and movement of confidential data, implementing and testing protections against data leaks, and monitoring activity on networks and systems. Access to systems and data is protected through the use of individual passwords. Physical access to facilities is controlled and monitored through individual access credentials. Monitoring and detection systems are regularly tested and continually evaluated.

17. Synovus requires all employees, including Dietz, to comply with its Acceptable Use Standard, a copy of which is attached as Exhibit A. The Acceptable Use Standard "defines objectives for establishing specific standards for the appropriate use of Company information assets and equipment (Assets)." (Ex. A, Section 1).

18. Synovus provides its employees, including managers, such as Dietz, and LOAN ORIGINATORS with specialized training including, but not limited to, training regarding products to be marketed and offered by Synovus and sale strategies regarding same, Company and community leadership training, and sales training, among other types of training.

19. Synovus's Information and specialized training qualify as legitimate business interests under Florida Statute section 542.335.

20. Synovus also has a legitimate protectable business interest in preventing its employees from being raided. *See PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1225 (M.D. Fla. 2012) ("employer's relationship with its employees is a legitimate business interest which may be protected by a reasonable anti-raiding covenant.").

### B. Dietz's Employment with Synovus and Restrictive Covenant Obligations

21. Synovus hired Dietz on September 8, 2015, as a Vice President Area Sales Leader for residential mortgages for the Southern Florida region, and he remained in that positon his entire employment with Synovus until his voluntary resignation on January 4, 2022.

22. Steve Shoemaker, Director of Residential Mortgage Production, was Dietz's direct supervisor during his entire employment.

23. Dietz's region encompassed all of Florida south of Orlando (from coast to coast).

24. Generally speaking, Dietz was responsible to oversee and grow Synovus's residential mortgage business in his region; specifically, he was responsible to recruit, hire, train and develop LOAN ORIGINATORS and administrative staff supporting the LOAN ORIGINATORS.

25. LOAN ORIGINATORS include employees in the positions of Mortgage Loan Officer and Mortgage Loan Originator.

26. Just prior to Dietz's voluntary resignation, a total of sixteen (16) LOAN ORIGINATORS worked in Dietz's region, and thus reported directly or indirectly to him.

27. Dietz's role at Synovus provided him with access to Information, including Synovus's customers, prospects referral sources, and significant insight and knowledge into their mortgage needs and service considerations.

28. Dietz's role at Synovus also provided him with access to Information pertaining to employees, such as LOAN ORIGINATORS, in his region, including compensation and other benefit terms, and past performance history (*i.e.* residential mortgage loan origination amounts).

29. On January 11, 2021, Dietz entered into a Variable Compensation Plan agreement with Synovus. A copy of the Agreement is attached as Exhibit B with confidential compensation information redacted (herein "Restrictive Covenant Agreement").

30. Among other things, the Restrictive Covenant Agreement contains specific restrictive covenants in Section 5.

31. Section 5b (Confidentiality) states:

*__Nondisclosure of Confidential Information__*
*All Confidential Information received, obtained or produced by the Participant while employed by Synovus is confidential to and shall remain the sole and exclusive property of Synovus. During the term of the Participant's employment by Synovus and for so long after the Participant's termination as the Confidential Information continues to qualify as such, the Participant shall hold all Confidential Information in trust and strictest confidence, and shall not use, reproduce, distribute, disclose or otherwise disseminate Confidential Information*

*without the prior express, written consent of Synovus. The Participant may in no event take any action causing or fail to take action necessary in order to prevent any Confidential Information to lose its confidential character or cease to qualify as Confidential Information. Nothing herein shall be interpreted as a limitation or restriction on the provisions of any applicable trade secrets statues, or any legal rights or remedies granted thereunder.*

32. Section 5d (Nonsolicitation of Synovus Customers) states:

   ***Nonsolicitation of Customers***
   *For a period of one (1) year following the voluntary or involuntary termination of the Participant's employment with Synovus for any reason, the Participant shall not, directly or by assisting others, solicit, attempt to solicit, call upon, divert, or initiate contact or communication with any Restricted Customer for the purpose of selling or providing, or attempting to sell or provide, any service or product competitive or potentially competitive with any product or service sold or provided by Synovus at any time during the period of one (1) year immediately preceding Termination.*

33. Section 5e (Nonsolicitation of Synovus Employees) states:

   ***Nonsolicitation of Synovus Employees***
   *During the term of the Participant's employment with Synovus and for a period of one (1) year following the voluntary or involuntary termination of the Participant's employment with Synovus for any reason, the Participant shall not, either directly or indirectly, solicit, recruit or otherwise encourage any Restricted Person to discontinue employment with Synovus. As used herein, a "Restricted Person" shall mean a person employed by Synovus and with whom the Participant had contact in the course of employment with Synovus.*

34. Section 5 further states: *"This Section 5 shall survive, and remain binding on [Dietz], notwithstanding the cessation of the [Dietz's] employment by Synovus for any reason or no reason."*

35. Synovus complied with all material terms of the Restrictive Covenant Agreement.

   ### C. Dietz's Solicitation of Synovus Employees in Violation of His Restrictive Covenant Agreement

36. On December 3, 2021, while still employed by Synovus, Dietz sent an email from his personal email account to a representative of Embrace Loans, Tyler Rhea, while also cc'ing

Mike Cockman and Justin Roth, Synovus LOAN ORIGINATORS that reported directly to Dietz, stating:

> *Tyler,*
>
> *Thank you once again for guiding us through the tour yesterday, and especially for your insights on the company. We came away with a very positive outlook for the future...*

(emphasis added) Copy of email is attached as Exhibit C.

37. The email referenced in ¶36, clearly demonstrates that Dietz is speaking on behalf of Mike Cockman and Justin Roth and that Dietz went with both Mr. Cockman and Mr. Roth to discuss employment with Embrace Loans.

38. Dietz's conduct violated Section 5(e) of his Restrictive Covenant Agreement.

39. On January 4, 2022, Dietz voluntarily resigned from employment with Synovus. A copy of his email resignation is attached as Exhibit D.

40. That very same day, three (3) LOAN ORIGINATORS that reported directly to Dietz, Mike Cockman, Justin Roth (the same two LOAN ORIGINATORS that accompanied Dietz on the tour at Embrace Loans one month earlier) and David Finney, also voluntarily resigned their employment with Synovus. Copies of their resignation letters are attached as Exhibit E.

41. In the prior twelve (12) month period prior to Dietz's resignation, out of all LOAN ORIGINATORS that reported to Dietz, Mike Cockman originated the sixth (6th) highest total value of residential mortgages, Justin Roth originated the seventh (7th) highest total value of residential mortgages, and David Finney originated the third (3rd) highest total value of residential mortgages.

42. Thereafter, Dietz, Mike Cockman, Justin Roth and David Finney all started employment with Embrace Loans, a direct competitor of Synovus.

4888-4270-0306.2

43. According to his LinkedIn profile, Dietz is working for Embrace Loans within the same geographic market as he did for Synovus.

44. According to their LinkedIn profiles, Mike Cockman, Justin Roth and David Finney are working for Embrace Loans within the same geographic markets as they did for Synovus.

45. In a letter dated January 4, 2022 (the same day Dietz resigned), Synovus reminded Dietz of his continuing restrictive covenant obligations to Synovus, and Synovus's belief that he had violated the restriction against soliciting Synovus employees. A copy of the letter to Dietz is attached as Exhibit F.

46. On January 31, 2022, Jose Silva, another LOAN ORIGINATOR that reported to Dietz, voluntarily resigned his employment with Synovus. A copy of Silva's email resignation is attached as Exhibit G.

47. Based on his LinkedIn profile, Jose Silva is working for Embrace Loans within the same geographic market as he did for Synovus.

48. In the twelve (12) month period prior to Dietz's resignation, Jose Silva originated the eighth (8th) highest total value of residential mortgages out of all the LOAN ORIGINATORS that reported to Dietz.

49. Also on January 31, 2022, Laura Dorsey, another LOAN ORIGINATOR that reported to Dietz, voluntarily resigned her employment with Synovus. A copy of Dorsey's email resignation is attached as Exhibit H.

50. Based on her LinkedIn profile, Laura Dorsey is working for Embrace Loans within the same geographic market as she did for Synovus.

4888-4270-0306.2

51. In the twelve (12) month period prior to Dietz's resignation, Laura Dorsey originated the fourth (4th) highest total value of residential mortgages out of all the LOAN ORIGINATORS that reported to Dietz.

52. On February 1, 2022, Kristiana Serbin, who worked in an administrative position that supported LOAN ORIGINATORS that reported to Dietz and who herself indirectly reported to Dietz, voluntarily resigned her employment with Synovus. A copy of Serbin's email resignation is attached as Exhibit I.

53. Based on her LinkedIn profile, Kristiana Serbin is working for Embrace Loans within the same geographic market as she did for Synovus.

54. On February 2, 2022, Matthew Ramsey, another LOAN ORIGINATOR that reported to Dietz, voluntarily resigned his employment with Synovus. A copy of Ramsey's email resignation is attached as Exhibit J.

55. Based on his LinkedIn profile, Matthew Ramsey is working for Embrace Loans within the same geographic market as he did for Synovus.

56. In the twelve (12) month period prior to Dietz's resignation, Matthew Ramsey originated the second (2nd) highest total value of residential mortgages out of all the LOAN ORIGINATORS that reported to Dietz.

57. During about a thirty (30) day period after Dietz resigned his employment with Synovus to work with Embrace Loans, seven (7) Synovus employees who were managed by Dietz also resigned their employment with Synovus to work with Embrace Loans.

58. Upon information and belief, Mike Cockman, Justin Roth, David Finney, Jose Silva, Laura Dorsey, Kristiana Serbin and Matthew Ramsey all report, either directly or indirectly, to Dietz at Embrace Loans.

59. Dietz directly or indirectly, solicited, recruited or otherwise encouraged Mike Cockman and Justin Roth to terminate their employment with Synovus and join him at Embrace Loans in violation of Section 5(e) of his Restrictive Covenant Agreement.

60. Upon information and belief, David Finney, Jose Silva, Laura Dorsey, Kristiana Serbin and Matthew Ramsey to terminate their employment with Synovus and join him at Embrace Loans in violation of Section 5(e) of his Restrictive Covenant Agreement.

61. Dietz's conduct in violation of Section 5(e) of his Restrictive Covenant Agreement has caused Synovus to suffer damages in excess of $75,000, exclusive of costs and interest, including but not limited to lost revenue and profits from lost mortgage loan originations and the cost to recruit and replace the critical and key employees.

**COUNT I – BREACH OF THE COVENANT
OF NONSOLICITATION OF SYNOVUS' EMPLOYEES**

62. Synovus repeats and restates the allegations in Paragraphs 1 through 61 as if incorporated here in full.

63. Section 5(e) of the Restrictive Covenant Agreement contains a non-solicitation provision which prohibits Dietz during his employment with Synovus and for a period of one (1) year following the voluntary or involuntary termination of his employment with Synovus from either directly or indirectly, soliciting, recruiting or otherwise encouraging any Synovus employee with whom Dietz worked with at Synovus to discontinue his/her employment with Synovus.

64. Dietz breached Section 5(e) by soliciting Justin Roth and Michael Cockman to terminate their employment with Synovus and join him at Embrace Loans.

4888-4270-0306.2

65. Upon information and belief, Dietz also breached Section 5(e) by soliciting David Finney, Jose Silva, Laura Dorsey, Kristiana Serbin and Matthew Ramsey to terminate their employment with Synovus and join him at Embrace Loans.

66. Dietz solicited the top performing LOAN ORIGINATORS that reported to him at Synovus.

67. For instance, even though Justin Roth, Michael Cockman David Finney, Jose Silva, Laura Dorsey, and Matthew Ramsey amounted to about 1/3 of the total number of LOAN ORIGINATORS that reported to him, those six individuals accounted for about 55% of the total amount of residential mortgages originated under Dietz.

68. The covenants in Section 5 of the Restrictive Covenant Agreement, including in section "e", are necessary to protect and maintain Synovus's legitimate business interests, including but not limited to its valuable confidential business Information, protecting against its employees being raided, and investments in the training of its employees.

69. Dietz's breach of his Restrictive Covenant Agreement's nonsolicitation of Synovus' employees provision has caused and continues to cause Synovus damages, including lost revenue, profits and the costs to replace the employees that were solicited to separate their employment with Synovus.

70. Synovus is entitled to extend the period of time the covenants are in effect equal to the period of time for which Dietz has been in violation of his obligations under his Restrictive Covenant Agreement.

71. Dietz's breach of his Restrictive Covenant Agreement has caused and continues to cause Synovus irreparable harm and unquantifiable damages.

72. Synovus lacks an adequate remedy at law and the interest of the public will be well-served by the entry of an injunction.

73. As a result of Dietz's conduct as alleged herein, Synovus has been required to retain the undersign law firm. Plaintiff is entitled to recover costs and attorneys' fees against Dietz pursuant to section 542.335(k), Florida Statutes.

**WHEREFORE**, Synovus respectfully requests entry of judgment in its favor and against Dietz, awarding it damages and pre- and post-judgment interest resulting from Dietz's actions, awarding Synovus its attorneys' fees and costs, and entering a temporary and permanent injunction enjoining Dietz from soliciting Synovus employees and from violating the other restrictive covenants in his Restrictive Covenant Agreement.

Dated:  March 11, 2022                              Respectfully submitted,

/s/ Leonard V. Feigel
Leonard V. Feigel
Florida Bar No. 0027752
Primary Email: lfeigel@foley.com
Secondary Email: psutherin@foley.com
Kevin E. Hyde
Florida Bar No. 0768325
Primary Email: khyde@foley.com
Secondary Email: aware@foley.com
FOLEY & LARDNER LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32201-5017
904.359.2000 (Telephone)
904.359.8700 (Facsimile)

**Attorneys for Plaintiff
Synovus Bank**

## VERIFICATION

I, Steve Shoemaker, of full age, being duly sworn according to law, upon oath, depose and state as follows:

1. I am employed by Synovus Bank, ("Synovus"), the plaintiff in this action, as its Director of Residential Mortgage Production.

2. I have read the foregoing Verified Complaint and all of the allegations contained therein. All of the allegations in the Verified Complaint related to Synovus are true based on my personal knowledge and the business records of Synovus.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2022

By _____
Steve Shoemaker, Director of Residential Mortgage Production

Sworn to and subscribed before me this 10 day of March, 2022, by Steve Shoemaker, who has produced ___DL___ as identification or is personally known to me.

SCOTT KAAK
Notary Public
Alabama State at Large
My Commission Expires Feb 26, 2025

Notary Public

Scott Kaak  2/26/25
Printed Name, Expiration Date & ID Number

15

4888-4270-0306.2